IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MARK NORDRUM,

         Petitioner,

 v.

BRAD KOSBAB,

         Respondent.

OPINION and ORDER

18-cv-78-jdp

---

Petitioner Mark Nordrum, appearing pro se, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. He challenges state court convictions from Vernon County Case No. 12CF98 for multiple counts of driving while intoxicated and causing an accident in which he injured another motorist and her son. The petition is fully briefed and ready for decision. For the reasons set forth below, I conclude that Nordrum has failed to show a denial of his constitutional rights. Accordingly, I will deny his petition.

BACKGROUND

The following facts are drawn from the petition and state court records provided by Nordrum and the state.

In Vernon County Case No. 12CF98, Nordrum was charged with multiple offenses for operating a motor vehicle under the influence of an intoxicant, crashing into another car, and injuring the driver and passenger in the other car. The underlying allegations accused Nordrum of driving his friend's truck into oncoming traffic and causing a head-on collision with another vehicle. After the crash, the truck ended up in the front yard of a group home for juveniles. Nordrum denied that he was the driver of the vehicle in question and proceeded to a jury trial.

At trial, Nordrum's friend Eric Johnson testified that he and Nordrum spent the evening of July 27, 2012 drinking at numerous bars. Johnson testified that he and Nordrum rode in Johnson's truck together, with Johnson driving during the first part of the evening and Nordrum driving later, when the crash occurred. Dkt. 15-9, at 150. Johnson testified that although he could not remember the crash, he thought he hit his head on the windshield because his face and nose were bleeding profusely. *Id.* at 154. (Johnson's blood-stained shirt was introduced into evidence. Pictures of Johnson's sandals were also introduced. After the crash, one of Johnson's sandals was found in the middle of the truck and the other was near the brake pedal. *Id.* at 157.) Johnson testified that he had a brief phone conversation with Nordrum on the morning after the crash, during which Johnson accused Nordrum of wrecking his truck. *Id.* at 167. Nordrum responded that he had not been driving. *Id.*

Demetrius Smith, a resident of the group home near the crash, testified that the crash woke him up, and that he woke up a staff member, James Satterwhite. Dkt. 15-10, at 7. Smith testified that he and Satterwhite were outside between 15 to 20 seconds after he heard the crash. *Id*. at 8. Smith also testified that when he arrived outside, he saw Nordrum exit the driver's side of the truck and later, saw Nordrum run away through a corn field. *Id*. at 9.

Satterwhite testified next. He stated that when he arrived outside with Smith, he saw the driver-side door swing open and saw Nordrum fall to the ground. *Id.* at 15. Nordrum told Satterwhite that there was another person in the truck, and Satterwhite walked to the truck and looked inside. He saw a man, later identified as Johnson, "stuck in between the dashboard, the passenger door, and the seat." *Id*. Satterwhite opened the passenger door and pulled Johnson out of the truck. Satterwhite testified that there was blood "all over the center console" and from the center console to the passenger side door. *Id.* at 18. He also said that Nordrum

2

was not bleeding, that Johnson's head was bleeding, and that there was no blood on the driver's side of the vehicle. *Id.* at 19. Satterwhite testified that Nordrum said to Johnson, "Come on. Let's go," and that Nordrum tried to start the truck, but it would not start. *Id.* at 22-23. Sometime later, when emergency vehicles were approaching, Nordrum put on a shirt, said something to Johnson, and ran into a corn field. *Id.* at 27.

The first officer to respond to the crash testified that Johnson was standing near the passenger side of the truck when he arrived on the scene. Dkt. 15-9, at 255. The officer observed that Johnson was bleeding and had facial injuries and appeared to be intoxicated. *Id.* Another officer testified that a canine-assisted search for Nordrum was unsuccessful. Nordrum was arrested two days later, in Minnesota. Dkt. 15-5, ¶ 6.

A bartender from one of the bars that Nordrum and Johnson had visited on the night of the crash testified that both men were very intoxicated and that she refused to serve them more than one drink. Dkt. 15-9, at 133. She did not see which man was driving the truck when they left. *Id.* at 135.

An analyst from the state crime laboratory testified that a stain on the driver-side air bag tested positive for blood, but that there was not enough blood to determine the source of the blood. Dkt. 15-9, at 206. Three bloodstains were identified on the passenger-side airbag. Nordrum was the source of one stain and Johnson was the source of the other two. *Id.* at 212. Because the top of the airbag was not labeled when it was removed from the truck, the analyst was unable to place the bloodstains in their relative positions within the truck. *Id.* at 213. Johnson's blood was also found on the passenger-side "A-frame." *Id.* at 210.

The jury found Nordrum guilty of one count of causing great bodily harm by operation of a vehicle while under the influence of an intoxicant; one count of causing bodily harm by

3

operation of a vehicle while under the influence of an intoxicant; one count of causing great bodily harm by the negligent operation of a vehicle; and one count of causing bodily harm by the negligent operation of a vehicle. He was sentenced to seven-and-a-half years of initial confinement and four years of extended supervision.

Nordrum filed a motion in the circuit court for a new trial, raising due process and ineffective assistance of counsel claims. After his motion was denied, Nordrum appealed to the Wisconsin Court of Appeals. The court of appeals affirmed, and the Wisconsin Supreme Court denied Nordrum's petition for review.

ANALYSIS

Nordrum contends that he is entitled to habeas relief because: (1) the state violated his due process rights by failing to disclose that the state's witness, Demetrius Smith, had prior juvenile adjudications; (2) the state violated his due process rights by failing to preserve the victim's vehicle and its event data recorder; and (3) his trial counsel was ineffective in a number of ways.

Because the Wisconsin Court of Appeals addressed the merits of Nordrum's claims when it affirmed the denial of his postconviction motion, this court's review is subject to the deferential standard of review under 28 U.S.C. § 2254(d). Under § 2254(d)(1), Nordrum must show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." A decision is contrary to clearly established federal law if it applies a rule that is different from governing law set forth in Supreme Court cases. *Bailey v. Lemke*, 735 F.3d 945, 949–50 (7th Cir. 2013). A decision

involves an unreasonable application of Supreme Court precedent if the decision identifies the correct governing rule of law, but it applies the law unreasonably to the facts of the case. *Id*.

Alternatively, Nordrum can obtain relief if he shows that the state court's adjudication of his claims was based upon an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2). But again, the federal court owes deference to the state court. The underlying state court findings of fact and credibility determinations are presumed correct unless the petitioner comes forth with clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Campbell v. Smith*, 770 F.3d 540, 546 (7th Cir. 2014).

**A. The state's failure to disclose witness's juvenile record**

Nordrum contends that the state violated his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose that witness Demetrius Smith had a juvenile record. Under *Brady* and the Due Process Clause of the Fourteenth Amendment, the prosecution has a duty to disclose material evidence favorable to the accused upon request. *Id.* at 87 ("We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."). Evidence is "material" under *Brady* if there is a reasonable probability that the result of the proceeding would have been different if the evidence had been disclosed to the defense. *Banks v. Dretke*, 540 U.S. 668, 698 (2004).

In rejecting Nordrum's *Brady* claim, the Wisconsin Court of Appeals concluded that, although the state should have disclosed Smith's juvenile record, Nordrum was not prejudiced by the nondisclosure. Dkt. 15-5, ¶ 10, 13. Smith was a non-interested bystander who had no apparent motive to lie to the jury about the accident or Nordrum's actions, so there was no

5

reasonable possibility that the jury would have viewed Smith's credibility differently had it known about his juvenile record. *Id.* at ¶ 13.

The court of appeals' analysis is a reasonable application of *Brady* because, as the court explained, Nordrum was not prejudiced by the state's nondisclosure. Introduction of Smith's juvenile record likely would have had no effect on the jury's assessment of Smith's credibility. Smith had no reason to lie to the jury about the accident and, in any event, Smith's testimony was very brief and cumulative to Satterwhite's testimony. Smith testified only that he heard the crash, woke Satterwhite, went outside, and saw Nordrum exit the driver's side of the vehicle and run away through a corn field. Satterwhite confirmed Smith's version of events and provided more detailed testimony regarding the incident, and specifically, about Johnson's injuries and location in the vehicle. Therefore, Nordrum has not shown that his due process rights were violated when the state failed to inform him of Smith's juvenile adjudications.

**B. The state's failure to preserve the victims' vehicle**

Nordrum also contends that his due process rights were violated when the victim's car was released from being impounded and destroyed. Nordrum contends that the post-trial destruction of the car precluded access to the vehicle's event data recorder, which he believes may have contained exculpatory evidence concerning how the crash happened.

The destruction of potentially exculpatory evidence violates a criminal defendant's right to due process if (1) the state acted in bad faith; (2) the exculpatory value of the evidence was apparent before it was destroyed; and (3) the evidence was of such a nature that the defendant was unable to obtain comparable evidence by other reasonably available means. *McCarthy v. Pollard*, 656 F.3d 478, 485 (7th Cir. 2011) (citing *California v. Trombetta*, 467 U.S. 479, 489 (1984) and *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988)).

The Wisconsin Court of Appeals rejected this claim, stating that Nordrum had failed to show that the victim's car was exculpatory or that the state acted in bad faith. I agree. As the court explained, this case turned on whether Nordrum was driving the truck that caused the accident. Dkt. 15-5, ¶ 21. The event data recorder in the victim's car "could not possibly have shed light on that inquiry." *Id.* In addition, Nordrum has not shown that the state released the vehicle in bad faith.

C. **Ineffective assistance of trial counsel**

Nordrum contends that his trial counsel was ineffective by failing to (1) present evidence that Eric Johnson's blood alcohol concentration test was cancelled; (2) impeach Johnson with evidence of his prior conviction for operating while intoxicated; (3) cross-examine witness Demetrius Smith; (4) present evidence that the police failed to analyze the event data recorder in the victim's car; and (5) present evidence that the police did not follow "best practices" in conducting the investigation.

The Wisconsin Court of Appeals stated correctly that to succeed on his ineffective assistance claims, Nordrum must show show both that his counsel's performance was deficient and that he was prejudiced as a result. Dkt. 15-5, ¶ 23; *see also See Harrington v. Richter*, 562 U.S. 86, 104 (2011); *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate deficient performance, Nordrum must show "that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. "This means identifying acts or omissions of counsel that could not be the result of professional judgment." *Sussman v. Jenkins*, 636 F.3d 329, 349 (7th Cir. 2011) (internal quotation marks and citations omitted). To demonstrate prejudice, Nordrum must show "a reasonable probability that, but for

7

counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 499 U.S. at 694.

    **1. Failure to question police about Johnson's blood alcohol concentration test**

Nordrum faults trial counsel for not informing the jury that police obtained a blood sample from Eric Johnson, but never tested it to determine his blood alcohol concentration. Nordrum contends that this evidence shows that the police operated with "tunnel vision," focusing on him as the only suspect.

The Wisconsin Court of Appeals rejected this argument on the ground that Nordrum could not show that exclusion of this evidence prejudiced him. Dkt. 15-5, ¶ 27. I agree. As the court of appeals stated, there was ample evidence that Nordrum was driving at the time of the crash. *Id.* In addition, whether Johnson was intoxicated was not in dispute. There was testimony from a police officer, bartender, and Johnson himself, that Johnson was intoxicated. The question to be decided by the jury was whether Nordrum was driving, and the results of Johnson's blood alcohol concentration test would have shed little light, if any, on that question. Therefore, Nordrum was not prejudiced by counsel's failure to introduce evidence of the cancelled test.

    **2. Failure to impeach Johnson with prior conviction for operating while intoxicated**

Nordrum contends that trial counsel was ineffective for not impeaching Johnson with the fact that he had been convicted previously for operating while intoxicated. Nordrum contends that counsel could have emphasized that Johnson had a motive to lie because he faced a possible second-offense operating while intoxicated conviction. The Wisconsin Court of Appeals concluded that counsel's failure to impeach Johnson with his prior conviction was not

8

prejudicial to Nordrum because a "second-offense OWI prosecution is far less serious" than the other felonies that Johnson would have faced if he had been the driver. Dkt 15-5, ¶ 28. Johnson would have "faced the same criminal charges, including two felonies, facing Nordrum." *Id.* The jury knew that the driver faced serious felony charges, and the "there is no reason to believe that the jury would have believed that Johnson was more likely to say that Nordrum was driving because of the potential second-offense OWI prosecution rather than the threat of four criminal charges, including two felonies." *Id.*

The court of appeals reasonably determined that failing to impeach Johnson with his prior conviction was not prejudicial to Nordrum. Even though the jury did not know about Johnson's prior conviction, the jury knew that the driver responsible for the crash faced serious felony charges and that Johnson would have a motive to lie to avoid such charges. The jury assessed that motive and determined that Johnson was telling the truth. Nordrum is not entitled to relief on this claim.

### 3. Failure to cross-examine witness Demetrius Smith

Nordrum contends that trial counsel was deficient for failing to cross-examine witness Demetrius Smith. Trial counsel did not cross-examine Smith because counsel had made an agreement with the state that he would not cross-examine Smith if the state agreed to not introduce at trial a statement that Smith had given to a deputy sheriff the night before trial in which he stated that Nordrum had admitted to driving the truck at the time of the incident. Dkt. 15-5, ¶ 29. Nordrum contends that counsel should have cross-examined Smith about the statement, and that counsel should have pointed out that Smith's "statement of the facts had changed in the eleventh hour." Dkt. 20 at 3.

I agree with the Wisconsin Court of Appeals that Nordrum was not prejudiced by trial counsel's decision not to cross-examine Smith. Dkt. 15-5, ¶ 30. Smith's testimony added little to the state's case. As discussed above, Smith's testimony was minimal, and Satterwhite testified in much greater detail about the scene of the accident. In addition, trial counsel's decision not to question Smith about Nordrum's alleged admission was a reasonable trial strategy, not an example of below-standard legal work. Because Smith had no reason to lie about Nordrum, the jury may well have believed Smith that Nordrum confessed to being the driver. Therefore, Nordrum is not entitled to relief on this claim.

4. **Failure to introduce evidence about event data recorder**

Nordrum also faults trial counsel for not presenting evidence that the police failed to obtain or analyze the event data recorder in the victim's car. Nordrum contends that the data retrieved from the car could have helped the jury understand how the accident happened. The court of appeals rejected this claim for the same reasons it rejected Nordrum's stand-alone claim regarding the state's failure to preserve the event data recorder: the event data recorder from the victim's car was irrelevant to the key issue of the case, which was who was driving the truck. Dkt. 15-5, ¶ 31. This conclusion is reasonable for the reasons explained already.

5. **Failure to introduce evidence that police did not use best practices**

Nordrum's final argument is that trial counsel should have argued to the jury that police failed to comply with "best practices," and thus likely missed relevant evidence that would have established who was driving the vehicle. Nordrum does not identify specific problems with the investigation in his petition, but in the state courts, Nordrum argued that the police failed to comply with "best practices" regarding the collection of biological samples from the truck. Dkt. 15-5, ¶ 32. The court of appeals discussed how the state's shortcomings in handling the

10

evidence was presented to the jury, but the court concluded that counsel was not deficient and Nordrum was not prejudiced in that regard. *Id.* at ¶ 33.

This was a reasonable application of *Strickland*. The jury heard that police mishandled the evidence at the crime scene. Even if defense counsel failed to present to the jury every instance in which police officers could have done a better job in collecting evidence, the other evidence in the case, primarily Satterwhite's testimony, was overwhelming. Therefore, I agree with the court of appeals that Nordrum is not entitled to relief on this claim.

**D. Certificate of Appealability**

Under Rule 11 of the Rules Governing Section 2254 cases, I must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires him to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 13 529 U.S. 473, 484 (2000)). Although the rule allows me to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case. For the reasons already stated, I conclude that Nordrum has not made a showing, substantial or otherwise, that his conviction was obtained in violation of clearly established federal law as decided by the Supreme Court. Because reasonable jurists would not otherwise debate whether a different result was required, I will not issue Nordrum a certificate of appealability.

11

ORDER

IT IS ORDERED that:

1. Mark Nordrum's petition for a writ of habeas corpus under 28 U.S.C. § 2254, Dkt.1, is DENIED, and this case is DISMISSED. The clerk of court is directed to enter judgment for respondent and close this case.

2. A certificate of appealability is DENIED. If Nordrum wishes, he may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

Entered October 28, 2019.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge